UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER PAGE,<br>c/o Global Natural Gas Ventures LLC<br>101 Park Ave., Suite 1300<br>Oklahoma City, OK 73102<br>(405) 825-0172,<br><br>     Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530-0001,<br><br>     Defendant. | Case: **1:19−cv−03149**<br>Assigned To : **Jackson, Ketanji Brown**<br>Assign. Date : **10/21/2019**<br>Description: **FOIA/Privacy Act (I−DECK)** |

## COMPLAINT

Plaintiff Carter Page ("Dr. Page") for his Complaint against U.S. Department of Justice ("DOJ") brings this action for injunctive, declaratory and monetary relief pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*, the Freedom of Information Act, 5 U.S.C. § 552(a) *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

1.   This Court has jurisdiction pursuant to 5 U.S.C. § 552a(g)(1), 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. 1331.

2.   Venue is appropriate in the District of Columbia under 5 U.S.C. §§ 552a(g)(5), 552(a)(4)(B), and 28 U.S.C. § 1391.

3.      Dr. Page filed his original Privacy Act requests with DOJ, dated May 21, 2017. In addition to the primary one related to his illegal FISA warrants, he simultaneously mailed one related to disclosures surrounding his support of the FBI as an informant.

## PARTIES

4.      Plaintiff Carter Page, Ph.D. ("Dr. Page"), *pro se*, is an individual who currently maintains no permanent residence or domicile anywhere due to the terror threats that have resulted from the disinformation distributed by the Defendant and their associates since 2016. Dr. Page is the Managing Partner of Global Natural Gas Ventures LLC ("GNVG"), an Oklahoma Corporation with principal offices in Oklahoma City.  He is also the Managing Partner of Global Energy Capital LLC ("GEC"), a New York Corporation with principal offices in New York City and a scholar in foreign policy. GNGV and GEC are investment management and advisory firms focused on the energy sector primarily in emerging markets.

5.      Defendant DOJ is an agency within the meaning of 5 U.S.C. § 552a(a)(1), and is in possession and/or control of records pertaining to Dr. Page.

## STATEMENT OF FACTS

6.      Throughout the period since 2017, Plaintiff Dr. Page has provided the Defendant with extensive evidence of DOJ's Privacy Act violations stemming from the DOJ's alleged FISA abuse.  These violations extend all the way back to on or around the time of his original requests addressed to the FOIA/PA Mail Referral Unit in May 2017.   Similar requests were also delivered to the agency under DOJ's jurisdiction, the Federal Bureau of Investigation ("FBI"), as well as the National Security Agency ("NSA").  To this day, all of his Privacy Act requests have still never been properly fulfilled.

2

7.      As a primary example of these Privacy Act violations, the Defendant prematurely leaked the Plaintiff's illegitimate FISA affidavits to the *New York Times* on Saturday, July 21, 2018.[1] This occurred days before Dr. Page received a copy for himself from the government on Monday, July 23, 2018.  Contrary to his prior requests which began approximately fourteen months earlier in May 2017, at no time has the Plaintiff ever been granted the opportunity to amend this system of records in accordance with 5 U.S.C. § 552a(d)(2).

8.      In a letter to U.S. Senate Judiciary Chairman Lindsey Graham and other Congressional leaders on September 13, 2019, the Department of Justice's Inspector General ("IG")  Michael E. Horowitz wrote to Congress that DOJ would "[ensure] appropriate reviews occur for accuracy and comment purposes" prior to release of the system of records pertaining to Dr. Page which will be included with the IG's FISA abuse report.[2]

9.      With regards to the most urgent actionable request at this current late point in the process, the DOJ's Office of Privacy and Civil Liberties ("OPCL") website specifies the following procedural standards: "Within ten working days of receiving your request for amendment or correction of records, the component that received your request should send you a written acknowledgment of its receipt of your request, notifying you whether your request is granted or denied."[3]  To the contrary, it took one full month before Dr. Page received any response to his emails from this office.  In this context and contrary to the suggestions previously made to the Plaintiff by other components of DOJ including the Office of Information Policy

---

[1]    Charlie Savage, "Carter Page FISA Documents Are Released by Justice Department," *New York Times*, July 21, 2018. https://www.nytimes.com/2018/07/21/us/politics/carter-page-fisa.html

[2]    https://www.cnn.com/2019/09/13/politics/inspector-general-fisa-justice-department-fbi/index.html

[3]    https://www.justice.gov/opcl/doj-privacy-act-requests

("OIP"), a senior member of one of the Congressional Committees which oversees the Justice Department has recently reported that the Inspector General's FISA abuse report is now expected to be released imminently even though appropriate Privacy Act reviews for accuracy and comment purposes have not been completed yet.[4]

10.     More specifically, this is most concerning since Dr. Page has still not had any opportunity to verify these systems of records pertaining to himself for accuracy purposes.  This runs contrary to both: (A) the legal tenets enumerated in 5 U.S.C. § 552a(d)(2) subsection that allows for amendment of government records pertaining to an individual as the Plaitiff had requested long ago, and (B) Inspector General Horowitz's September 13 letter to Senate Judiciary Chairman Lindsey Graham and other Congressional leaders that indicated his assurance that "appropriate reviews occur for accuracy and comment purposes" would occur prior to release of the forthcoming FISA abuse report.  By all indications and in accordance with the Privacy Act statute, no other such possible review by anyone else seems as critically important as the one that Dr. Page has been awaiting to eventually conduct to no avail.

11.     On multiple occasions in September 2019 through October 2019, Dr. Page has again requested his legal right to review the FISA abuse Inspector General report draft.  Contrary to the provisions of the Privacy Act statute, these requests have not yet been fulfilled.

12.     Following these and other extensive news reports in the immediate aftermath of the original defamatory reports that the Defendant had knowingly misused in its false FISA affidavits, Dr. Page wrote a letter to Director of the Federal Bureau of Investigation James Comey on the evening of Sunday, September 25, 2016 (the "FBI Letter").  This represented a

---

4

https://www.realclearpolitics.com/video/2019/10/06/ratcliffe_doj_inspector_generals_report_on_fisa_abuse_during_2016_election_will_be_released_friday.html

first initial effort to amend the system of records regarding the Plaintiff and ensure Privacy Act

compliance with regards to these malevolent defamatory falsehoods that had been facilitated by

the Defendant.  Prior to the revelation of the illegitimate source of the libelous information that

had recently been distributed worldwide with the help of the Defendant and their associates in

September 2016, the FBI Letter accurately assessed as a complete waste of time any inquiry of

these sensationalist stories about Dr. Page and how any resultant Federal investigations these

falsehoods might inspire represented nothing more than a witch hunt (the "Witch Hunt").

13.     The public controversy that the Defendant originated worldwide regarding false

allegations about Dr. Page's participation in Russia's alleged involvement in cyber operations

related to the 2016 election did not exist before the publication of defamatory information that

the Defendant allegedly helped to spread.[5] The outcome of this prominent fabricated controversy

had a monumental direct impact on not only Dr. Page, but individuals beyond those directly

involved in the dispute.  These individuals impacted by this malicious defamation included Mr.

Donald J. Trump and other supporters of his 2016 campaign, including peripheral ones such as

Dr. Page (collectively, the "Trump Movement").

14.     Dr. Page frequently experienced life-threatening damages following publication

of news articles which stemmed from the false information compiled and distributed with the

direct support of the Defendant, in violation of the Privacy Act (confidential audio version of this

recording is available for the Court upon request).

---

[5]  Kimberley A. Strassel, "What Bruce Ohr Told the FBI," *Wall Street Journal*, January 17, 2019.  https://www.wsj.com/articles/what-bruce-ohr-told-the-fbi-11547770923

15.     Amidst unrelenting malicious attacks by the Defendant and since the Plaintiff did not qualify for U.S. Secret Service protection, Dr. Page has agreed to interviews with various media outlets in the interest of setting the record straight regarding the defamatory statements by the Defendant and in an attempt to limit further damages from malicious false stories that stemmed from the disinformation provided to reporters by the Defendant. In addition to the severe harm to the Plaintiff, as a patriotic American veteran Dr. Page was also motivated in the interest of helping to repair some of the severe damage to the U.S. that the Defendant helped facilitate including the Witch Hunt against the Trump Movement.

16.     In February 2018, the U.S. House Permanent Select Committee on Intelligence ("HPSCI") released a memorandum[6] ["HPSCI Memo"] which disclosed information that further exposed alleged illicit activities by the Defendant. In particular, the abuse of process in another federal court in the Prettyman Courthouse was included in the introductory summary of the implications of HPSCI's findings: "1) raise concerns with the legitimacy and legality of certain DOJ and FBI interactions with the Foreign Intelligence Surveillance Court (FISC), and (2) represent a troubling breakdown of legal processes established to protect the American people from abuses related to the FISA process."

17.     Similarly, prior to the Defendant's illegal distribution of life-threatening defamatory allegations and related disinformation, Dr. Page's own professional reputation had remained untarnished and key to his ability to building GEC as an international financial institution. As a direct result of the false information spread by the Defendant, Dr. Page's business interests at GNGV and GEC suffered, and will continue to suffer, actual injury as a result of injury to its corporate reputation. At least three banks and diversified financial services

---

[6]   https://intelligence.house.gov/uploadedfiles/memo_and_white_house_letter.pdf

companies have declined to do business with GEC and GNVG based on the defamatory statements published by the Defendant and, on information and belief, the defamatory statements have also cost GNGV clients.

18.     As a direct and proximate result of the Defendant' malicious misconduct, Dr. Page suffered anguish, humiliation, embarrassment and severe damage to his reputation – all of which are continuing in nature and will be suffered in the future.

## CAUSES OF ACTION

### First Cause of Action
### (Privacy Act/Freedom of Information Act—Denial of Access to Records)

19.     Dr. Page repeats and realleges the allegations contained in the preceding paragraphs 1 through 18, inclusive.

20.     By letter dated May 21, 2017, Dr. Page submitted requests to the DOJ, FBI and NSA under the Privacy and Freedom of Information Acts for copies of all information related about himself.

21.     By letter dated June 29, 2017, the DOJ acknowledged receipt and assigned Dr. Page's request MRU tracking number 7015 3430 0000 5942 4306.

22.     On several occasions throughout the years since, Dr. Page has contacted the DOJ for an update on the processing of his files.  Upon information and belief, the DOJ and FBI instead illegally disclosed a redacted version of the system of records to the *New York Times* before affording Dr. Page any opportunity to complete a  5 U.S.C. § 552a(d)(2) review.

23.     Dr. Page has exhausted all required and available administrative remedies.

24.     Dr. Page has a legal right under the Privacy and Freedom of Information Acts to obtain the information he seeks and to amend those systems of records.  There is no legal basis for the DOJ's continued delays and denials of said right.

### Second Cause of Action (Privacy Act—Improper Dissemination)

25.     Dr. Page repeats and realleges the allegations contained in the preceding paragraphs 1 through 18, inclusive.

26.     The DOJ, through the actions of its staff and associated federal agencies under its jurisdiction including the FBI, disseminated information protected by the Privacy Act concerning Dr. Page to the *New York Times* and other media organizations in July 2018.  The information included, but is not limited to, Dr. Page's unverified redacted FISA affidavits of October 2016, January 2017, April 2017 and June 2017.

27.     In violation of section (d)(1) of the Privacy Act, the FBI failed to secure written authorization from Dr. Page prior to providing the specific information detailed above to the media.  Nor was immediate disclosure permitted by any legitimate routine exception prior to appropriate review by Dr. Page as allowed in section (d)(2).

### Third Cause of Action (Privacy Act—Improper Dissemination)

28.     Dr. Page repeats and realleges the allegations contained in the preceding paragraphs 1 through 18, inclusive.

29.     Prior to disseminating information and records concerning Dr. Page, the DOJ failed to make reasonable efforts to ensure that the information and records were accurate, complete, timely and relevant for agency purposes in violation of 5 U.S.C. § 552a(e)(6). The DOJ compiled information concerning Dr. Page's alleged collusion with sanctioned Russian officials.  The information and records that were disseminated to unauthorized individuals were irrelevant, false, malicious and defamatory, incomplete, inaccurate, and untimely.

30.     The DOJ, its employees and officers, including those in the affiliated agency of the FBI under their jurisdiction, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

31.     The DOJ, its employees and officers, including those in the affiliated agency of the FBI under their jurisdiction, acted intentionally or willfully in violation of Dr. Page's privacy rights.

32.     As a result of the DOJ's violations of the Privacy Act, Dr. Page has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Page requests that the Court award him the following relief:

i.     Declare that the DOJ violated the Privacy and Freedom of Information Acts;

ii.     Order the DOJ to immediately disclose the previously requested records in their entireties to Dr. Page;

iii.     Order the DOJ to immediately discontinue the further release of the systems of records pertaining to Dr. Page, including the forthcoming Inspector General FISA abuse report until all other related records in their entireties are reviewed for accuracy by the Plaintiff;

iv.     Invoke its equitable powers to expunge all records or information maintained by the DOJ that is inaccurate and/or derogatory to Dr. Page;

v.     Award Dr. Page any actual damages under 5 U.S.C. § 552a(g)(4)(A), the exact amount of which is to be determined at trial but is not less than $1,000;

vi.     Award plaintiff reasonable costs and court's fees as provided in 5 U.S.C. §§

        552a(g)(3)(B) and/or (4)(B), 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d);

vii.    Refer those DOJ officials responsible for violating the Privacy Act for

        prosecution under 5 U.S.C. § 552a(i)(1); and

viii.   Expedite this action in every way pursuant to 28 U.S.C. § 1657 (a).

Respectfully submitted this 21st day of October, 2019 by:

The Plaintiff,
By: /s/ Carter Page
Carter Page

c/o Global Natural Gas Ventures LLC
101 Park Ave., Suite 1300
Oklahoma City, OK 73102
Phone (405) 825-0172
Fax    (405) 825-0177
cpage@globalenergycap.com