## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Carter PAGE,                                           )
                                                      )
   Plaintiff,                         )
                                                      )
v.                                                    )
                                                      )   Case No. 1:19-CV-03149-KBJ
UNITED STATES DEPARTMENT OF JUSTICE,  )
                                                      )
   Defendant.                        )
                                                      )

## DEFENDANT'S PARTIAL MOTION TO DISMISS
## AND FOR PARTIAL SUMMARY JUDGMENT

      Defendant United States Department of Justice ("DOJ") hereby moves to dismiss in part pursuant to Fed. R. Civ. P. 12(b), and for partial summary judgment pursuant to Fed. R. Civ. P. 56(b) and Local Rule 7(h), for the reasons stated in the attached memorandum of points and authorities, statement of material facts, and supporting declarations and exhibits.

Dated:  December 23, 2019                 Respectfully Submitted,


                                          ETHAN P. DAVIS
                                          Principal Deputy Assistant Attorney General

                                          MARCIA BERMAN
                                          Assistant Director, Federal Programs Branch

                                          */s/Amy E. Powell*
                                          AMY E. POWELL
                                          Trial Attorney, Federal Programs Branch
                                          Civil Division, Department of Justice
                                          c/o U.S. Attorney's Office
                                          150 Fayetteville St., Suite 2100
                                          Raleigh, NC 27601
                                          Phone: 919-856-4013
                                          Email:  amy.powell@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Carter PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:19-CV-03149-KBJ |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

As required by Local Civil Rule 7(h)(1), and in support of the Motion for Partial
Summary Judgment, Defendants hereby make the following statement of material facts as to
which there is no genuine issue:

1.      By letter dated May 21, 2017, Plaintiff submitted a request to DOJ under FOIA
and the Privacy Act for ten categories of documents that were either related to FISA surveillance
of Carter Page or DOJ communications about Carter Page.  The request specified the timeframe
of the request as June 1, 2016 to April 30, 2017.  Declaration of Vanessa R. Brinkmann, dated
Dec. 23, 2019 ("Brinkmann Decl.") ¶ 3 & Ex. A.

2.      Page submitted this request to the Mail Referral Unit rather than any particular
component of DOJ.  *See generally* https://www.justice.gov/oip/make-foia-request-doj
(explaining that FOIA requests will receive a quicker response if directed to appropriate
components).  The request was referred to OIP, which responded by letter dated June 29, 2017.
Brinkmann Decl. ¶¶ 3-4 & Ex. B.

3.     OIP made a determination that NSD would respond to paragraphs 1-4 (related to FISA surveillance) and otherwise informed Plaintiff that it was searching for and processing documents related to communications about Carter Page.  Brinkmann Decl. Ex. B.  OIP also informed Page that it was referring the request or portions thereof "to the Criminal Division (CRM), Executive Office for United States Attorneys (EOUSA), National Security Division (NSD), and Office of Legal Counsel (OLC) for processing the direct response to you."  *Id*.  The letter further informed Page of his right to appeal the "partial determination" and that the appeal "must be postmarked or electronically submitted within ninety days of the date of my response to your request."  *Id*.  OIP had further communications with Mr. Page about the request, but did not receive an administrative appeal of the partial determination.  Brinkmann Decl. ¶¶ 5-8; Declaration of Priscilla A. Jones, dated Dec. 23, 2019 ("P. Jones Decl.") ¶ 3.

4.     By letter dated June 23, 2017, NSD FOIA acknowledged receipt of Plaintiff's request.  Declaration of Kevin G. Tiernan, dated Dec. 19, 2019, ¶¶ 6-7.  By letter dated October 13, 2017, NSD made a final determination, refusing to confirm or deny the existence of responsive records.  *Id*. ¶ 8 & Ex. C.  This letter also informed Plaintiff of his right to administratively appeal to OIP and how to do so.  *Id*.  No appeal was received.  *Id*. ¶ 9; P. Jones Decl. ¶ 3.

5.     By letter dated July 20, 2017, OLC acknowledged receipt of the FOIA Request.  Declaration of Paul Colborn, dated Dec. 20, 2019, ¶¶ 2-3.  Plaintiff subsequently sought and was denied expedited processing.  His appeal of the expedited processing determination was pending when OLC made a final determination on the request.  *Id*. ¶¶ 4-7.  By letter dated August 2, 2017, OLC informed Plaintiff that OLC had completed a search for parts (5) through (10) of the FOIA request and had identified no responsive records. *Id*. ¶ 6 & Ex. E.  OLC further reminded

Plaintiff that as he had been advised in a June 29, 2017 letter from OIP, NSD would respond to parts (1) through (4) of his request. *Id*. This letter also informed Plaintiff of his right to administratively appeal to OIP and how to do so. *Id*. No appeal was received. *Id*. ¶ 8; P. Jones Decl. ¶ 3.

6.     By letter dated July 3, 2019, the Criminal Division acknowledged receipt. Declaration of Amanda M. Jones, dated Dec. 19, 2019, ("A. Jones Decl.") ¶ 8. September 11, 2017, the Criminal Division made a final determination, reminding Plaintiff that NSD was responding to paragraphs 1-4 and informing Plaintiff that no responsive records were located as to the remainder of the request. *Id*. ¶¶ 10-11 & Ex. D. This letter also informed Plaintiff of his right to administratively appeal to OIP and how to do so. *Id*. No appeal was received. *Id*. ¶ 12; P. Jones Decl. ¶ 3.

7.     By letter dated June 26, 2017, EOUSA informed Plaintiff that his access request was deficient for failure to identify the specific U.S. Attorney's Office where the requested records may be located. Declaration of Nicole Moore, dated December 20, 2019, ¶¶ 9, 12-17 & Ex. 4. Plaintiff was advised that once he cured the deficiencies in his request, he could submit a new request for the records, and a new file would be opened. *Id*.

8.     OIP has confirmed that none of the final determinations were appealed. P. Jones Decl. ¶ 3.

9.     EOUSA reasonably determined that Plaintiff never perfected his request. Moore Decl. ¶¶ 9, 12-16 & Ex. 4. EOUSA oversees 94 U.S. Attorney's Offices throughout the country. Moore Decl. ¶ 11; *see also* https://www.justice.gov/usao/eousa. And it would be unreasonably burdensome to search every office. Moore Decl. ¶ 13. In accordance with its usual practices, EOUSA determined that the request provided insufficient information to for the component to

guess where to locate records about Page.  Moore Decl. ¶¶ 12-17 & Ex. 4.  He was informed of the deficiency, pointed to the appropriate regulation, and invited to submit a more specific request.  *Id*.

10.     In March 2017, the Department acknowledged a national security investigation of "the Russian government's efforts to interfere in the 2016 presidential election[, including] the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts [and] an assessment of whether any crimes were committed." *See The Washington Post*, Full transcript: FBI Director James Comey testifies on Russian interference in 2016 election (Mar. 20, 2017), https://www.washingtonpost.com/news/post-politics/wp/2017/03/20/full-transcript-fbi-director-james-comey-testifies-on-russian-interference-in-2016-election/?utm_term=.b9f19a0cf9cf; *see also* October 2018 Declaration of David Hardy, submitted in *James Madison Project v. DOJ*, Case 1:17-cv-00597-APM, Redacted Version at Dkt 40-1 ("October 2018 Hardy Decl."), at ¶¶ 14-16.

11.     In March 2017, the House Permanent Select Committee on Intelligence ("HPSCI") also announced an investigation into "the Russian active measures campaign targeting the 2016 U.S. election" and later added additional areas of inquiry, including allegations regarding the purported "FISA abuse." *See* October 2018 Hardy Decl. ¶¶ 15-17. In February 2018, President Trump authorized the declassification and disclosure of the Nunes Memo, dated January 18, 2018.  *See* https://republicans-intelligence.house.gov/uploadedfiles/memo_and_white_house_letter.pdf; *see also* Compl. ¶ 16 (quoting a portion of the Nunes Memo); October 2018 Hardy Decl. ¶¶ 18-19.  As set forth in a February 2, 2018, letter from the White House Counsel, the Nunes Memo was declassified "in

light of the significant public interest in the memorandum," and "reflects the judgments of its

congressional authors."  *Id.*  Approximately three weeks after the public disclosure of the Nunes

Memo, an unclassified, redacted version of the Schiff Memo, dated January 29, 2018, addressed

to All Members of the House of Representatives, and entitled "Correcting the Record – The

Russia Investigations" ("Schiff Memo"), was released.  *See*

https://intelligence.house.gov/uploadedfiles/redacted_minority_memo_2.24.18.pdf (last visited

Dec. 23, 2019).  Prior to its release, the FBI reviewed the Schiff Memo and redacted classified

information unaffected by the President's declassification of the Nunes Memo.  October 2018

Hardy Decl. ¶¶ 20-22.

     12.     The information in these documents confirmed publicly, for the first time in early

2018, that Carter Page had been the subject of a FISA warrant and three renewals from 2016-

2017, all following his separation from the Presidential campaign.  At the time these were

disclosed, there were multiple pending FOIA requests that encompassed the FISA applications,

some of which were in litigation.  *See James Madison Project, et al. v. DOJ*, No. 17 Civ. 597-

APM (D.D.C.) (Status Report, Dkt. No. 34 & Minute Entry Dated Mar. 19, 2018) (setting

schedule for production of applications); *Poulsen v. Department of Defense, et al.*, No. 17 Civ.

3531-WHO (N.D. Cal.) (Dkt. No. 46) (similar); *Gizmodo Media Group, LLC v. DOJ*, 17 Civ.

3566-DLC (S.D.N.Y.) (Dkt. No. 44) (similar); *New York Times v. DOJ*, 18 Civ. 2054 (S.D.N.Y.)

(Dkt. No. 11); *Judicial Watch v. DOJ*, No. 18 Civ. 245-CRC (D.D.C.) (Dkt. No. 7) (similar).

Prior to this public acknowledgement, DOJ had refused to confirm or deny the existence of FISA

application related to Carter Page or any other particular target.  *See, e.g., James Madison

Project v. DOJ*, No. 17-CV-00597 (APM), 2019 WL 3430728, at *1 (D.D.C. July 30, 2019)

("The Carter Page FISA applications were publicly acknowledged following release of a

declassified memorandum from Devin Nunes"); *Poulsen*, 373 F. Supp. 3d 1249, 1257-58 (N.D. Cal. 2019) ("in November 2017 . . . , each of the Agencies either affirmed or stated in the first instance that they would rely on Glomar to refuse to confirm or deny the existence of responsive records."); 2018 Hardy Decl. ¶¶ 14, 23-24.  Given this public acknowledgement of the FISA applications and orders related to Carter Page, however, DOJ reviewed and processed the documents in accordance with FOIA.  *Poulsen*, 373 F. Supp. 3d at 1258 ("In light of the declassification and release [of the Nunes and Schiff Memos], the government acknowledged the existence of [FISA] applications and orders to conduct surveillance of Carter Page.").

13.     In accordance with schedules imposed by the various courts, on July 20, 2018, DOJ and the FBI released all responsive, non-exempt and reasonably segregable information subject to FOIA – releasing 412 pages with redactions and withholding 186 pages in full.  *Id.* (explaining that 1 application was processed for release to Poulsen but others were processed for other requestors).  This package was sent to the FOIA requestors (including both this Plaintiff and *The New York Times*).  *See* Compl. ¶ 7 (alleging that Plaintiff received the package on July 23, 2018).  After being sent to the requestors, the redacted documents were posted on the FBI website.  *See* https://vault.fbi.gov/d1-release/d1-release; *see also* 5 U.S.C. § 552(a)(2)(D) (publication of frequently requested records).  The vast majority of these documents was redacted, on the grounds of numerous exemptions, including exemptions that protect privacy interests.  *Id.*; *see also* October 2018 Hardy Decl. ¶¶ 96-111 (explaining privacy-related redactions in the FISA applications and orders).  One related FOIA matter is still pending in this district, and the Government's renewed summary judgment motion is pending.  *See James Madison Project v. DOJ*, No. 17 Civ. 597-APM (D.D.C.) (Dkt. No. 52) (Aug. 30, 2019).  In

another case in the Northern District of California, the Court granted the Government's motion for summary judgment. *Poulsen*, 373 F. Supp. 3d at 1255.

Dated:  December 23, 2019                    Respectfully Submitted,


                                             ETHAN P. DAVIS
                                             Principal Deputy Assistant Attorney General

                                             MARCIA BERMAN
                                             Assistant Director, Federal Programs Branch

                                             */s/Amy E. Powell*
                                             AMY E. POWELL
                                             Trial Attorney, Federal Programs Branch
                                             Civil Division, Department of Justice
                                             c/o U.S. Attorney's Office
                                             150 Fayetteville St., Suite 2100
                                             Raleigh, NC 27601
                                             Phone: 919-856-4013
                                             Email:  amy.powell@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Carter PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:19-CV-03149-KBJ |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S
PARTIAL MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**

ETHAN P. DAVIS
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
c/o U.S. Attorney's Office
150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

I.    STATUTORY BACKGROUND – THE FREEDOM OF INFORMATION ACT ........... 2

II.    STATUTORY BACKGROUND – THE PRIVACY ACT ............................................... 2

III.    FACTUAL BACKGROUND .......................................................................................... 4

IV.    ADMINISTRATIVE BACKGROUND AND CURRENT LITIGATION ....................... 8

ARGUMENT ............................................................................................................................. 13

I.    DEFENDANT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE
ACCESS CLAIM BECAUSE PLAINTIFF DID NOT EXHAUST
ADMINISTRATIVE REMEDIES WITH RESPECT TO ALL COMPONENTS. ......... 13

II.    PLAINTIFF'S IMPROPER DISCLOSURE CLAIMS SHOULD BE DISMISSED. ...... 17

A.    Plaintiff Has Not Identified an Improper Disclosure Under the Privacy Act. ......... 18

B.    Plaintiff Has Not Pled a Willful or Intentional Violation. ....................................... 21

III.    NO INJUNCTIVE REMEDY IS AVAILABLE FOR THE IMPROPER
DISCLOSURE CLAIMS. ............................................................................................ 22

IV.    PLAINTIFF FAILS TO ALLEGE A VIOLATION OF SECTION 552a(e)(6). .............. 22

CONCLUSION ......................................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Abhe & Svoboda, Inc. v. Chao*,
   508 F.3d 1052 (D.C. Cir. 2007)................................................................................ 13

*Albright v. United States*,
   732 F.2d 181 (D.C. Cir. 1984).................................................................................. 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 13

*Barouch v. DOJ*,
   962 F. Supp. 2d 30 (D.D.C. 2013)............................................................................ 14

*Betz v. First Credit Servs., Inc.*,
   139 F. Supp. 3d 451 (D.D.C. 2015).......................................................................... 24

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................. 18

*Chichakli v. Tillerson*,
   882 F.3d 229 (D.C. Cir. 2018)........................................................................ 4, 6, 17

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ................................................................................................. 20

*CIA v. Sims*,
   471 U.S. 159 (1985) ................................................................................................... 2

*Ctr. for Nat'l Sec. Studies v. DOJ*,
   331 F.3d 918 (D.C. Cir. 2003)................................................................................... 2

*Dettmann v. DOJ*,
   802 F.2d 1472 (D.C. Cir. 1986)................................................................................ 13

*Doe v. Chao*,
   540 U.S. 614 (2004) ................................................................................................. 18

*Doe v. Stephens*,
   851 F.2d 1457 (D.C. Cir. 1988)................................................................................ 22

*Ebling v. DOJ*,
   796 F. Supp. 2d 52 (D.D.C. 2011)...................................................................... 13, 14

*Elgabrowny v CIA*,
   No. 17-CV-00066 (TSC), 2019 WL 1440345 (D.D.C. Mar. 31, 2019) .................... 18

*Gov't Accountability Project v. DOJ*,
  852 F. Supp. 2d 14 (D.D.C. 2012)............................................................................. 13, 14

*Greentree v. U.S. Customs Service*,
  674 F.2d 74 (D.C. Cir. 1982)................................................................................. 3, 18, 20

*Henke v. Dep't of Commerce*,
  83 F.3d 1453 (D.C. Cir. 1966)................................................................................................ 3

*James Madison Project v. DOJ*,
  No. 17-CV-00597 (APM), 2019 WL 3430728 (D.D.C. July 30, 2019)...................................... 6

*Jenkins v. DOJ*,
  263 F. Supp. 3d 231 (D.D.C. 2017)...................................................................................... 16

*Jenkins v. DOJ*,
  No. 17-5184, 2018 WL 4151275 (D.C. Cir. Aug. 14, 2018) .................................................. 16

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ............................................................................................................... 2

*Kearns v. FAA*,
  312 F. Supp. 3d 97 (D.D.C. 2018)........................................................................................ 14

*Keys v. Dep't of Homeland Sec.*,
  No. 08-CV-0726, 2009 WL 614755 (D.D.C. Mar. 10, 2009) ................................................ 16

*Kursar v. Transportation Sec. Admin.*,
  751 F. Supp. 2d 154 (D.D.C. 2010), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011)....................... 23

*Leighton v. CIA*,
  412 F.Supp.2d 30 (D.D.C.2006)........................................................................................... 23

*Maydak v. United States*,
  630 F.3d 166 (D.C. Cir. 2010)........................................................................................ *passim*

*McCready v. Nicholson*,
  465 F.3d 1 (D.C. Cir. 2006)................................................................................................. 20

*Mulhern v. Gates*,
  525 F. Supp. 2d 174 (D.D.C. 2007)...................................................................................... 14

*Murray v. Shulkin*,
  273 F. Supp. 3d 87 (D.D.C. 2017)......................................................................................... 3

*Oglesby v. Dep't of the Army*,
  920 F.2d 57 (D.C. Cir. 1990).......................................................................................... 2, 13, 14

*Paige v. DEA*,
 665 F.3d 1355 (D.C. Cir. 2012) ............................................................................. 3

*Plunkett v. DOJ*,
 924 F. Supp. 2d 289 (D.D.C. 2013) ................................................................ 17, 20

*Poulsen v. Dep't of Def.*,
 373 F. Supp. 3d 1249 (N.D. Cal. 2019) ........................................................ 7, 8, 19

*Reed v. Dep't of the Navy*,
 910 F. Supp. 2d 32 (D.D.C. 2012) ......................................................................... 21

*Reinbold v. Evers*,
 187 F.3d 348 (4th Cir. 1999) ................................................................................. 23

*Richardson v. Bd. of Governors of Fed. Reserve Sys*,
 288 F. Supp. 3d 231 (D.D.C. 2018), *aff'd*, No. 18-5063, 2018 WL 4103305 (D.C. Cir. Aug.
 15, 2018) ................................................................................................................ 22

*Sandoval v. DOJ*,
 296 F.Supp.3d 1 (D.D.C. Nov. 2, 2017) ..................................................... 14, 15, 16

*Sellers v. Bureau of Prisons*,
 959 F.2d 307 (D.C. Cir. 1992) ............................................................................... 23

*Sussman v. U.S. Marshals Serv.*,
 494 F.3d 1106 (D.C. Cir. 2007) .................................................................. 18, 21, 22

*Thorn v. United States*,
 No. 04-1185, 2005 WL 3276285 (D.D.C. Aug. 11, 2005) ..................................... 13

*Tijerina v. Walters*,
 821 F.2d 789 (D.C. Cir. 1987) ............................................................................... 21

*Tooley v. Bush*,
 Civ. No. 06-306 (CKK), 2006 WL 3783142 (D.D.C. Dec. 21, 2006) ................... 16

*Tooley v. Napolitano*,
 586 F.3d 1006 (D.C. Cir. 2009) ............................................................................. 16

*Waters v. Thornburgh*,
 888 F.2d 870 (D.C. Cir. 1989) ......................................................................... 18, 21

*Webb v. Magaw*,
 880 F. Supp. 20 (D.D.C. 1995) .............................................................................. 23

*Wilbur v. CIA*,
 355 F.3d 675 (D.C. Cir. 2004) ............................................................................... 13

*Yelder v. Dep't of Def.*,
   577 F. Supp. 2d 342 (D.D.C. 2008) ........................................................................ 13

**Statutes**

5 U.S.C. § 552 ............................................................................................... *passim*

5 U.S.C. § 552a ............................................................................................. *passim*

**Rule**

Fed. R. Civ. P. 56(a) .............................................................................................. 13

**Legislative Materials**

*Analysis of House and Senate Compromise Amendments to the Federal Privacy Act*, *reprinted in* 120 Cong. Rec. 40405 (1974)………………………………………………………………21

H.R. Rep. No. 89-1497 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418…………………………..2

**Regulations**

28 C.F.R. § 16.3 .................................................................................................... 15

28 C.F.R. § 16.9(a) ................................................................................................ 13

28 C.F.R. § 16.41 .................................................................................................. 15

**Other Authorities**

All Members of the House of Representatives, "Correcting the Record – The Russia Investigations" (Jan. 29, 2018),
   https://intelligence.house.gov/uploadedfiles/redacted_minority_memo_2.24.18.pdf................6

Dep't of Justice, Executive Office for U.S. Attorneys,
   https://www.justice.gov/usao/eousa..........................................................................16

Dep't of Justice, Make a FOIA Request to Dep't of Justice,
   https://www.justice.gov/oip/make-foia-request-do..............................................9-10

Dep't of Justice, Office of Inspector General, "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation" (Dec. 9, 2019),
   https://www.justice.gov/storage/120919-examination.pdf.........................................................8

Foreign Intelligence Surveillance Court, In re Carter W. Page,
   https://vault.fbi.gov/d1-release/d1-release...............................................................7

*New York Times*, *Carter Page FISA Documents Are Released by the Justice Department* (July 21, 2018),
   https://www.nytimes.com/2018/07/21/us/politics/carter-page-fisa.html..................................19

President Trump Authorized the Declassification and Disclosure of the Hon. Devin Nunes
Memorandum (Jan. 18, 2018),
   https://republicans-intelligence.house.gov/uploadedfiles/memo_and_white_house_letter.pdf...5

*Report On The Investigation Into Russian Interference In The 2016 Presidential Election*
(Mar. 2019) by Special Counsel Robert S. Mueller, III,
   https://www.justice.gov/storage/report.pdf............................................................................4-5

*The Washington Post, Full transcript: FBI Director James Comey testifies on Russian
interference in 2016 election* (Mar. 20, 2017),
   https://www.washingtonpost.com/news/post-politics/wp/2017/03/20/full-transcript-fbi-
   director-james-comey-testifies-on-russian-interference-in-2016-
   election/?utm_term=.b9f19a0cf9cf…………………………………………………………..4

## INTRODUCTION

Plaintiff Carter Page has been the subject of intense public interest on several occasions. Most relevant here, in February 2018, the President declassified and Congress disclosed the fact that Plaintiff was the subject of a warrant issued by the Foreign Intelligence Surveillance Court and three renewals.  His complaint here purports to bring claims against the Department of Justice under the Freedom of Information Act and the Privacy Act, but none of these claims has merit.

First, Plaintiff brings "access" claims related to his rights to certain requested documents about himself.  The request for documents described in the Complaint was forwarded to multiple components of the Department of Justice ("DOJ").  Three of those components – the Office of Legal Counsel, the Criminal Division, and the National Security Division, made final determinations, and the Office of Information Policy ("OIP") (which processes requests directed to the leadership offices, including but not limited to the Office of the Attorney General, the Deputy Attorney General, Associate Attorney General, Legislative Affairs and Public Affairs) made a final determination as to part of the request.  Plaintiff did not timely appeal those determinations, and DOJ is entitled to summary judgment on Count I insofar as it challenges the response of those components. A fifth component – the Executive Office for U.S. Attorneys – determined that it was not a proper request, a determination not challenged here. (OIP has not made a final determination as to the remainder of the request, and the Federal Bureau of Investigation has not made a final determination.  Count I therefore need not be fully dismissed.)

Second, Plaintiff also brings a set of claims related to alleged improper disclosures of his private information.  But the allegedly improper disclosure was required by the Freedom of Information Act ("FOIA"), Plaintiff fails to plead the elements of a Privacy Act violation, and the relief he seeks is not legally available.  Accordingly, these claims should be dismissed.

1

## BACKGROUND

## I.    STATUTORY BACKGROUND – THE FREEDOM OF INFORMATION ACT

The "basic purpose" of FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  "Congress recognized, however, that public disclosure is not always in the public interest . . . ." *CIA v. Sims*, 471 U.S. 159, 166–67 (1985).  Accordingly, in passing FOIA, "Congress sought 'to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'" *John Doe Agency*, 493 U.S. at 152 (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423).  As the D.C. Circuit has recognized, "FOIA represents a balance struck by Congress between the public's right to know and the [G]overnment's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency*, 493 U.S. at 152).

FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exemptions.  *See* 5 U.S.C. § 552(b).  Section 552(a)(4) is the general FOIA provision authorizing judicial review of agency decisions to withhold records from FOIA requestors.  *See id.* § 552(a)(4)(B).  The D.C. Circuit has long held that full and timely exhaustion of administrative remedies is a prerequisite to judicial review under § 552(a)(4).  *See, e.g., Oglesby v. Dep't of the Army*, 920 F.2d 57, 61-62, 71 (D.C. Cir. 1990).

## II.    STATUTORY BACKGROUND - THE PRIVACY ACT

The Privacy Act imposes various requirements on agencies concerning the maintenance, collection, use, and dissemination of information contained in a "system of records." *See, e.g.,* 5 U.S.C. § 552a(b) ("Conditions of disclosure"), *id.* § 552a(d) ("Access to records"), *id.* § 552a(e)

("Agency requirements").  "[T]he extensive statutory requirements of section 552a(e) of the Act

come into play only with respect to information that is maintained in a 'system of records.'"

*Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010).  The statute defines a "system of

records" as "a group of any records under the control of any agency from which information is

retrieved by the name of the individual or by some identifying number, symbol, or other

identifying particular assigned to the individual[.]"  5 U.S.C. § 552a(a)(5).  "A system of records

exists only if the information contained within the body of material is both 'retrievable by

personal identifier' and 'actually retrieved by personal identifier.'"  *Maydak*, 630 F.3d at 178; *see*

*also Paige v. DEA*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (same); *Henke v. Dep't of Commerce*,

83 F.3d 1453, 1460 (D.C. Cir. 1966) ("[R]etrieval capability is not sufficient to create a system

of records.").  The Act authorizes different civil remedies depending on the nature of the claim.

      First, as relevant here, a plaintiff may request access to records pertaining to him or her in

a system of records pursuant to 5 U.S.C. § 552a(d)(1), and can bring a claim seeking injunctive

relief under §§ 552a(g)(1)(B), (g)(3).  The Privacy Act also grants agencies the power to exempt

systems of records from many of the Act's requirements.  Pursuant to 5 U.S.C. § 552a(j) and (k),

an agency head may promulgate rules exempting systems of records meeting certain criteria

from, for example, the right of access granted by Section 552a(d)(1).  With respect to requests

for access to records, agencies routinely process requests under both FOIA and the Privacy Act,

consistent with the overarching goal of "open government, and especially, accessibility of

government records."  *Greentree v. U.S. Customs Service*, 674 F.2d 74, 76 (D.C. Cir. 1982);

*Murray v. Shulkin*, 273 F. Supp. 3d 87, 93 (D.D.C. 2017).

      A plaintiff may also bring a claim for improper disclosure in violation of Section 552a(b)

pursuant to subsection (g)(1)(D)—the Act's "catch-all" provision, which also authorizes a civil

remedy of money damages against the agency under certain circumstances.  *See* 5 U.S.C. §§ 552a(g)(1)(D), (g)(4)(A). To state a claim for money damages under subsection (g)(1)(D), "a plaintiff must establish that (1) the agency violated a provision of the Act; (2) the violation was intentional or willful; and (3) the violation had an 'adverse effect' on the plaintiff in the form of actual damages." *Chichakli v. Tillerson*, 882 F.3d 229, 233 (D.C. Cir. 2018).

## III.    FACTUAL BACKGROUND

Plaintiff's lawsuit arises in the context of multiple investigations and previous litigation about previous investigations and prosecutions, all of which have generated extraordinary public attention and interest.  In March 2017, the Department acknowledged a national security investigation of "the Russian government's efforts to interfere in the 2016 presidential election[, including] the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts [and] an assessment of whether any crimes were committed." *See The Washington Post, Full transcript: FBI Director James Comey testifies on Russian interference in 2016 election* (Mar. 20, 2017), https://www.washingtonpost.com/news/post-politics/wp/2017/03/20/full-transcript-fbi-director-james-comey-testifies-on-russian-interference-in-2016-election/?utm_term=.b9f19a0cf9cf (last visited Dec. 23, 2019).  This investigation resulted in multiple other matters, some of which are still pending.  In March 2019, this investigation concluded with the delivery to the Attorney General of a confidential report. Following review for production to the public, a redacted version of the report was released on April 18, 2019.  *See Report On The Investigation Into Russian Interference In The 2016 Presidential Election* (Mar. 2019) by Special Counsel Robert S. Mueller, III,

https://www.justice.gov/storage/report.pdf (last visited Dec. 23, 2019).   The redacted version of the report was also later released in response to numerous FOIA requests.

In March 2017, the House Permanent Select Committee on Intelligence ("HPSCI") also announced an investigation into "the Russian active measures campaign targeting the 2016 U.S. election" and later added additional areas of inquiry, including allegations regarding the purported "FISA abuse." *See* October 2018 Declaration of David Hardy, submitted in *James Madison Project v. DOJ*, Case 1:17-cv-00597-APM, Redacted Version at Dkt 40-1 ("October 2018 Hardy Decl."), at ¶¶ 15-17.[1]  HPSCI's review led to competing memoranda authored by the Majority and the Minority members – often referred to by the names of the Chairman and the Ranking Member, *i.e.*, as the "Nunes Memo" and the "Schiff Memo."  Both memoranda were initially classified because, at a minimum, they revealed Foreign Intelligence Surveillance Act ("FISA") surveillance on an identified target – Carter Page – which was a properly classified fact.  *Id.* ¶ 17.

In February 2018, President Trump authorized the declassification and disclosure of the Nunes Memo, dated January 18, 2018. *See* https://republicans-intelligence.house.gov/uploadedfiles/memo_and_white_house_letter.pdf (last visited Dec. 23, 2019); *see also* Compl. (Dkt. No. 1) ¶ 16 (quoting a portion of the Nunes Memo); October 2018 Hardy Decl. ¶¶ 18-19.  As set forth in a February 2, 2018, letter from the White House Counsel, the Nunes Memo was declassified "in light of the significant public interest in the memorandum," and "reflects the judgments of its congressional authors."  *Id*. at 2. Approximately three weeks after the public disclosure of the Nunes Memo, an unclassified,

---

[1] This declaration was prepared for submission in another matter and provides useful background information here.

redacted version of the Schiff Memo, dated January 29, 2018, addressed to All Members of the

House of Representatives, and entitled "Correcting the Record – The Russia Investigations"

("Schiff Memo"), was released.  *See*

https://intelligence.house.gov/uploadedfiles/redacted_minority_memo_2.24.18.pdf (last visited

Dec. 23, 2019).  Prior to its release, the FBI reviewed the Schiff Memo and redacted classified

information unaffected by the President's declassification of the Nunes Memo.  October 2018

Hardy Decl. ¶¶ 20-22.  The FBI did not declassify additional information as part of this review.

*Id*.  Neither the Majority nor the Minority asked the FBI or the Department to opine on their

judgment or conclusions, and neither the FBI nor the Department did so; rather, both memoranda

reflect the judgments of their congressional authors.

The information in these documents confirmed publicly, for the first time in early 2018,

that Carter Page had been the subject of a FISA warrant and three renewals from 2016-2017, all

following his separation from the Presidential campaign.  At the time these were disclosed, there

were multiple pending FOIA requests that encompassed the FISA applications, some of which

were in litigation.  *See James Madison Project, et al. v. DOJ*, No. 17 Civ. 597-APM (D.D.C.)

(Status Report, Dkt. No. 34 & Minute Entry Dated Mar. 19, 2018) (setting schedule for

production of applications); *Poulsen v. Dep't of Def., et al.*, No. 17 Civ. 3531-WHO (N.D. Cal.)

(Dkt. No. 46) (similar); *Gizmodo Media Group, LLC v. DOJ*, 17 Civ. 3566-DLC (S.D.N.Y.)

(Dkt. No. 44) (similar); *New York Times v. DOJ*, 18 Civ. 2054 (S.D.N.Y.) (Dkt. No. 11); *Judicial*

*Watch v. DOJ*, No. 18 Civ. 245-CRC (D.D.C.) (Dkt. No. 7) (similar).  Prior to this public

acknowledgement, DOJ had refused to confirm or deny the existence of FISA applications

related to Carter Page or any other particular target.  *See, e.g., James Madison Project v. DOJ*,

No. 17-CV-00597 (APM), 2019 WL 3430728, at *1 n.1 (D.D.C. July 30, 2019) ("The Carter

Page FISA applications were publicly acknowledged following release of a declassified

memorandum from Devin Nunes"); *Poulsen v. Dep't of Def.*, 373 F. Supp. 3d 1249, 1257-58

(N.D. Cal. 2019) ("in November 2017 . . . , each of the Agencies either affirmed or stated in the

first instance that they would rely on Glomar to refuse to confirm or deny the existence of

responsive records."); 2018 Hardy Decl. ¶¶ 14, 23-24.  Given this public acknowledgement of

the FISA applications and orders related to Carter Page, however, DOJ reviewed and processed

the documents in accordance with FOIA.  *Poulsen*, 373 F. Supp. 3d at 1258 ("In light of the

declassification and release [of the Nunes and Schiff Memos], the government acknowledged the

existence of [FISA] applications and orders to conduct surveillance of Carter Page.").

In accordance with schedules imposed by the various courts, on July 20, 2018, DOJ and

the FBI released all responsive, non-exempt and reasonably segregable information subject to

FOIA – releasing 412 pages with redactions and withholding 186 pages in full.  *Id.* (explaining

that 1 application was processed for release to Poulsen but others were processed for other

requestors).  This package was sent to the FOIA requestors (including both this Plaintiff and *The

New York Times*).  *See* Compl. ¶ 7 (alleging that Plaintiff received the package on July 23, 2018).

After being sent to the requestors, the redacted documents were posted on the FBI website.  *See*

https://vault.fbi.gov/d1-release/d1-release (last visited Dec. 23, 2019); *see also* 5 U.S.C. §

552(a)(2)(D) (publication of frequently requested records).  The vast majority of these

documents was redacted, on the grounds of numerous exemptions, including exemptions that

protect privacy interests.  *Id.*; *see also* October 2018 Hardy Decl. ¶¶ 96-111 (explaining privacy-

related redactions in the FISA applications and orders).  One related FOIA matter is still pending

in this district, and the Government's renewed summary judgment motion is pending.  *See James*

*Madison Project v. DOJ*, No. 17 Civ. 597-APM (D.D.C.) (Dkt. No. 52) (Aug. 30, 2019).[2]  In

another case in the Northern District of California, the Court granted the Government's motion

for summary judgment.  *Poulsen*, 373 F. Supp. 3d at 1255.

Public interest in matters related to the Russia investigation has continued.  Most

recently, on December 9, 2019, the DOJ Office of Inspector General released a report entitled

"Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane

Investigation."  *See* https://www.justice.gov/storage/120919-examination.pdf (released

December 9, 2019) (hereinafter "OIG Report") (last visited Dec. 23, 2019).

## IV.    ADMINISTRATIVE BACKGROUND AND CURRENT LITIGATION

By letter dated May 21, 2017, Plaintiff submitted a request to DOJ under FOIA and the

Privacy Act for ten categories of documents that were either related to FISA surveillance of

Carter Page or DOJ communications about Carter Page:

1. "All information gathered pursuant to the warrant issued by the [FISC] authorizing the
   electronic surveillance of Carter Page."

2. "The warrant issued by the [FISC] authorizing the electronic surveillance of Carter
   Page;"

3.  "The application and all other materials submitted to the [FISC] to obtain a warrant
   authorizing the electronic surveillance of Carter Page;"

4. "All records relied upon in preparing the application to the [FISC]"

---

[2] In connection with that case, Plaintiff Carter Page actually submitted a waiver of his Privacy
Act rights with respect to any private information at issue in the FISA applications.  *See*
Declaration of Michael Seidel, submitted in *James Madison Project v. DOJ*, Case 1:17-cv-
00597-APM Dkt. No. 43-2.  He later rescinded that waiver, and nothing was disclosed in the
interim.  Declaration of Amy Powell, submitted in *James Madison Project v. DOJ*, at Dkt. No.
55-1.

5.  "All communications within [DOJ] concerning Carter Page."

6.  "All communications between any official, officer, or employee of [DOJ]and any official, officer, or employee of the [FBI], the National Security Agency, the National Security Council, the White House, or the Office of the Director of National Intelligence concerning Carter Page."

7.  "All communications between any official, officer, or employee of [DOJ] and any member or staff member of Congress concerning Carter Page as well as all records provided to any member or staff member of Congress concerning Carter Page."

8.   "All communications between any official, officer, or employee of [DOJ] and any journalist or member of the news media concerning Carter Page."

9.   "All communications between any official, officer, or employee of [DOJ] and any official, officer, or employee of Hillary Clinton's campaign for President or any representative of Hillary Clinton or her campaign concerning Carter Page."

10. "All communications between any official, officer, or employee of [DOJ] and any official, officer, or employee of Donald Trump's campaign for President, any representative of Donald Trump or his campaign, or any official, officer, employee, or representative of President-Elect Donald Trump's transition team concerning Carter Page."

Declaration of Vanessa R. Brinkmann, dated Dec. 23, 2019, ¶ 3 & Ex. A.  The request further specified the timeframe of the request as June 1, 2016 to April 30, 2017.  *Id.*  And it sought waiver of search and duplication fees.  *Id.*

Page submitted this request to the Mail Referral Unit rather than any particular component of DOJ.  *See generally* DOJ, Make a FOIA Request to DOJ,

https://www.justice.gov/oip/make-foia-request-doj (last visited Dec. 23, 2019) (explaining that FOIA requests will receive a quicker response if directed to appropriate components).  The request was initially referred to OIP and FBI; OIP responded by letter dated June 29, 2017. Brinkmann Decl. ¶¶ 3-4 & Ex. B.  OIP made a determination that NSD would respond to paragraphs 1-4 (related to FISA surveillance) and otherwise informed Plaintiff that it initiated searches relating to parts 5-10 of his request (related to communications about Carter Page).  *Id*. OIP also informed Page that it was forwarding the request or portions thereof "to the Criminal Division (CRM), Executive Office for United States Attorneys (EOUSA), National Security Division (NSD), and Office of Legal Counsel (OLC) for processing the direct response to you." *Id*.  The letter further informed Page of his right to appeal the partial determination and that the appeal "must be postmarked or electronically submitted within ninety days of the date of my response to your request."  *Id*.  OIP had further communications with Page about the request, but did not receive an administrative appeal of the partial determination.  Brinkmann Decl. ¶¶ 5-8; Declaration of Priscilla A. Jones, dated Dec. 23, 2019 ("P. Jones Decl.") ¶ 3.

By letter dated June 23, 2017, NSD FOIA acknowledged receipt of Plaintiff's request. Declaration of Kevin G. Tiernan, dated Dec. 19, 2019, ¶¶ 6-7.  By letter dated October 13, 2017, NSD made a final determination, refusing to confirm or deny the existence of responsive records. *Id*. ¶ 8 & Ex. C.  This letter also informed Plaintiff of his right to administratively appeal to OIP and how to do so.  *Id*.  No appeal was received.  *Id*. ¶ 9; P. Jones Decl. ¶ 3.

By letter dated July 20, 2017, OLC acknowledged receipt of the FOIA Request. Declaration of Paul Colborn, dated Dec. 20, 2019, ¶¶ 2-3.  Plaintiff subsequently sought and was denied expedited processing.  His appeal of the expedited processing determination was pending when OLC made a final determination on the request.  *Id*. ¶¶ 4-7.  By letter dated August 2,

2017, OLC informed Plaintiff that OLC had completed a search for parts (5) through (10) of the

FOIA request and had identified no responsive records. *Id*. ¶ 6 & Ex. E.  OLC further reminded

Plaintiff that as he had been advised in a June 29, 2017 letter from OIP, NSD would respond to

parts (1) through (4) of his request.   *Id*.  This letter also informed Plaintiff of his right to

administratively appeal to OIP and how to do so.  *Id*.  No appeal was received.  *Id*. ¶ 8; P. Jones

Decl. ¶ 3.

By letter dated July 3, 2019, the Criminal Division acknowledged receipt.  Declaration of

Amanda M. Jones, dated Dec. 19, 2019, ("A. Jones Decl.") ¶ 8.  September 11, 2017, the

Criminal Division made a final determination, reminding Plaintiff that NSD was responding to

paragraphs 1-4 and informing Plaintiff that no responsive records were located as to the

remainder of the request.  *Id*. ¶¶ 10-11 & Ex. D.  This letter also informed Plaintiff of his right to

administratively appeal to OIP and how to do so.  *Id*.  No appeal was received.  *Id*. ¶ 12; P. Jones

Decl. ¶ 3.

By letter dated June 26, 2017, EOUSA informed Plaintiff that his access request was

deficient for failure to identify the specific U.S. Attorney's Office where the requested records

may be located.  Declaration of Nicole Moore, dated December 20, 2019, ¶¶ 9, 12-17 & Ex. 4.

Plaintiff was advised that once he cured the deficiencies in his request, he could submit a new

request for the records, and a new file would be opened.  *Id*.

On October 21, 2019, Plaintiff filed the Complaint in this matter.  The Statement of Facts

makes a variety of allegations related to various components of DOJ "all the way back to on or

around the time of his original requests addressed to the FOIA/PA Mail Referral Unit in May

2017."  Compl. ¶ 6.[3]  It also alleges that DOJ "leaked" the FISA applications and orders, *id*. ¶ 7,

---

[3] This includes allegations about his communications with the Office of Inspector General and
the Office of Privacy and Civil Liberties.  The actual causes of action raised by the Complaint do

that he has been unable to "amend" his records, *id.* ¶ 12, and that he has "frequently experienced life-threatening damages following publication of news articles which stemmed from the false information compiled and distributed with the direct support of the Defendant," *id.* ¶¶ 14, 17-18. The First Cause of Action in the Complaint purports to raise a claim for denial of access to records under FOIA and the Privacy Act.  *Id.* ¶¶ 19-24.  It cites the May 21, 2017 request and OIP's acknowledgement and argues that DOJ has not complied with its obligations under FOIA or the Privacy Act.  *Id.*  The Complaint does not specify which component's actions are being challenged.  The Second Cause of Action purports to raise a claim under the Privacy Act for "improper dissemination" based on dissemination of "information protected by the Privacy Act concerning Dr. Page to the NY Times and other media organizations[, including] Dr. Page's unverified redacted FISA affidavits." *Id.* ¶¶ 25-27.  The Third Cause of Action also purports to raise a claim for improper dissemination based on DOJ's alleged failure "to make reasonable efforts to ensure that the information and records were accurate, complete, timely and relevant for agency purposes." *Id.* ¶¶ 28-32.  It alleges that "the information and records that were disseminated to unauthorized individuals were irrelevant, false, malicious and defamatory, incomplete inaccurate and untimely." *Id.*  The Complaint seeks declaratory and injunctive relief, including an injunction against further disclosures, expungement, actual damages, attorney's fees and that responsible DOJ officials be referred for prosecution.

---

not include any allegations related to these offices.  For example, Plaintiff alleges in the "Statement of Facts" that he sought access and amendment of the draft OIG report prior to its release, and had been denied access.  Compl. ¶¶ 8-11.  He did not, however, raise any actual claims about this denial of access.  *Id.* ¶¶19-24 (making access claim only related to the 2017 request; Brinkmann Decl. ¶ 3 & Ex. A (specified the timeframe of the request as June 1, 2016 to April 30, 2017).  Even if Plaintiff had made a claim about advance access to the report, it would be moot (as well as meritless). To the extent he has new claims related to the draft report, he should seek leave to amend the Complaint.

**ARGUMENT**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (citation omitted). Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I. DEFENDANT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ACCESS CLAIM BECAUSE PLAINTIFF DID NOT EXHAUST ADMINISTRATIVE REMEDIES WITH RESPECT TO ALL COMPONENTS.

FOIA requires the exhaustion of administrative remedies as a prerequisite to filing a FOIA lawsuit. *See Dettmann v. DOJ*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases."). This point of law is grounded in the text of FOIA. *See* 5 U.S.C. § 552(a)(3)(A)(ii) (requiring that requests for information be made in accordance with an agency's published regulations). *See also Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004); *Oglesby*, 920 F.2d at 61; *Yelder v. Dep't of Def.*, 577 F. Supp. 2d 342, 345 (D.D.C. 2008). With regard to components of the DOJ, such as the FBI, a requestor who is unsatisfied with a FOIA response is obligated to appeal to DOJ-OIP. 28 C.F.R. § 16.9(a). To meet this requirement, a plaintiff must follow the specified procedures for filing an appeal. *See Gov't Accountability Project v. DOJ*, 852 F. Supp. 2d 14, 21-22 (D.D.C. 2012) (plaintiff failed to exhaust where it allegedly faxed its appeal to OIP); *Ebling v. DOJ*, 796 F. Supp. 2d 52, 65-66 (D.D.C. 2011) (same); *Thorn v. United States*, No. 04-1185, 2005 WL 3276285, at *3 (D.D.C. Aug. 11, 2005) ("Plaintiff's letter to the Attorney General does not comply with the DOJ's

established procedures for pursuing an appeal.").  As courts in this district have stressed, "[t]hese procedures for appealing FOIA responses are not merely technical requirements."  *Gov't Accountability Project,* 852 F. Supp. 2d at 22.  "Rather, they are designed to create a uniform and streamlined process to ensure that appeals are received and processed, and the DOJ is entitled to insist that requestors adhere to their strictures."  *Ebling,* 796 F. Supp. 2d at 66.[4]

Moreover, "just as with FOIA, before a plaintiff may bring a cause of action to compel disclosure of records under the Privacy Act, he must first exhaust administrative remedies." *Kearns v. FAA*, 312 F. Supp. 3d 97, 107 (D.D.C. 2018); *see also Barouch v. DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) ("As with FOIA, once a Privacy Act request has been processed, a plaintiff is required to exhaust all administrative remedies before bringing an action to compel disclosure of documents."); *Mulhern v. Gates*, 525 F. Supp. 2d 174, 187 (D.D.C. 2007) ("[A] plaintiff must exhaust the administrative remedies established by an agency's Privacy Act regulations before bringing suit" to compel disclosure.).  Indeed, exhaustion under the Privacy Act, unlike under FOIA, is a jurisdictional threshold to challenging an agency determination. *Kearns*, 312 F. Supp. 3d at 107; *Sandoval v. DOJ*, 296 F.Supp.3d 1, 13 n.5 (D.D.C. Nov. 2, 2017) (noting that "exhaustion requirement under the Privacy Act is jurisdictional [and] the exhaustion requirement under FOIA is not").

Count 1 of the Complaint refers only to the May 21, 2017 request to DOJ.  Compl. ¶ 20.[5] DOJ FOIA regulations explain that the Department "has a decentralized system for responding to

---

[4] Although FOIA provides for constructive exhaustion if the agency does not respond within the statutory time limits, *see* 5 U.S.C. § 552(a)(6)(C), "an administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed."  *Oglesby,* 920 F.2d at 63.

[5] If Plaintiff wishes to bring a claim based on some other Privacy Act request for access or amendment, he should amend the complaint and identify the request so that Defendant can determine whether or not Plaintiff has exhausted with respect to that request.

FOIA requests, with each component designating a FOIA office to process records from that component." 28 C.F.R. § 16.3(a)(1).  Accordingly, each component made a separate evaluation of the request.  OIP reached a partial determination on that request by letter dated June 29, 2017. Brinkmann Decl. ¶ 4 & Ex. B.  It was not appealed.  *Id.*; P. Jones Decl. ¶ 3.  NSD, OLC, and the Criminal Division each made final determinations on the request, none of which was appealed. Tiernan Decl. ¶ 9; Colborn Decl. ¶ 8; A. Jones Decl. ¶ 12; P. Jones Decl. ¶ 3.

Another component – EOUSA – determined that Plaintiff never perfected his request. Moore Decl. ¶¶ 9, 12-16 & Ex. 4.  DOJ FOIA regulations provide that requestors "must describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort," including, to the extent possible, "specific information that may assist a component in identifying the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number."  28 C.F.R. § 16.3(b).  The regulations further provide that "[i]f after receiving a request a component determines that it does not reasonably describe the records sought, the component shall inform the requester what additional information is needed or why the request is otherwise insufficient," and that "[r]equesters who are attempting to reformulate or modify such a request may discuss their request with the component's designated FOIA contact, its FOIA Public Liaison, or a representative of the [OIP], each of whom is available to assist the requester in reasonably describing the records sought."  *Id.*  Similarly, the Privacy Act regulations provide that a requester "must describe the records that you want in enough detail to enable Department personnel to locate the system of records containing them with a reasonable amount of effort." 28 C.F.R. § 16.41.

Here, EOUSA oversees 94 U.S. Attorney's Offices throughout the country. Moore Decl. ¶ 11; *see also* https://www.justice.gov/usao/eousa (last visited Dec. 23, 2019). The Moore Declaration reasonably explains that searching every U.S. Attorney's Office for records responsive to a request like this one would be unreasonably burdensome. *Id*. ¶ 13. In accordance with its usual practices, EOUSA determined that the request provided insufficient information for the component to guess where to locate records about Page. Moore Decl. ¶¶ 12-17 & Ex. 4. Plaintiff was informed of the deficiency, pointed to the appropriate regulation, and invited to submit a more specific request. *Id*. He did not respond, and did not submit a new request. *Id*. ¶ 17. Accordingly, this request was properly closed, and Plaintiff failed to exhaust administrative remedies because he failed to submit a proper request. *See, e.g., Keys v. Dep't of Homeland Sec*., No. 08-CV-0726, 2009 WL 614755, at *5 (D.D.C. Mar. 10, 2009) ( "Plaintiff failed to exhaust his administrative remedies when he did not identify the office he wished to have searched in response to the EOUSA's response and did not administratively appeal the EOUSA's response."); *Tooley v. Bush*, Civ. No. 06-306 (CKK), 2006 WL 3783142, at *14 (D.D.C. Dec. 21, 2006) ("Plaintiff has neither provided the additional information requested by EOUSA nor appealed EOUSA's November 8, 2005 letter . . . , and as a result has failed to exhaust his administrative remedies."), *subsequent history on other claims, sub nom. Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009); *but see Jenkins v. DOJ*, 263 F. Supp. 3d 231, 234 (D.D.C. 2017) (concluding that Plaintiff did not submit a proper FOIA request because he did not specify the office likely to have records), *aff'd in part sub nom. Jenkins v. DOJ*, No. 17-5184, 2018 WL 4151275 (D.C. Cir. Aug. 14, 2018) (declining to affirm on these grounds, without explanation, possibly in light of subsequent search, and remanding for further development of these alternate grounds).

Any challenge to these determinations should be dismissed because Plaintiff did not

exhaust his administrative remedies.[6]

## II.    PLAINTIFF'S IMPROPER DISCLOSURE CLAIMS SHOULD BE DISMISSED.

Both the second and third causes of action are identified as "improper dissemination"

claims, Compl. ¶¶ 25-32, but the Complaint does not allege sufficient facts to plead an improper

disclosure claim.  As set forth above, to state a claim for money damages under subsection

(g)(1)(D), "a plaintiff must establish that (1) the agency violated a provision of the Act; (2) the

violation was intentional or willful; and (3) the violation had an 'adverse effect' on the plaintiff

in the form of actual damages." *Chichakli*, 882 F.3d at 233.

In order to show the first element – a violation – a plaintiff must show that the agency

"discloses" information in the form of a "record" from a "system of records" and the disclosure

is not pursuant to a valid exception under the Act. 5 U.S.C. § 552a(b); *Chichakli*, 882 F.3d at

233.  There are multiple exceptions, however, that permit disclosure (without consent), of private

information retrieved from a system of records.  *See* 5 U.S.C. §§ 552a(b)(1)-(b)(12) (12 statutory

exceptions).  These exceptions include disclosure pursuant to a "routine use."  *Id*. § 552a(b)(3);

*see generally Chichakli*, 882 F.3d 229 (describing "routine use").  Another exception is invoked

when disclosure is required by FOIA.  *See id*. § 552a(b)(2); *Plunkett v.  DOJ*, 924 F. Supp. 2d

289, 306-07 (D.D.C. 2013) ("[T]he Privacy Act does not bar disclosure of documents that are

otherwise required to be disclosed under the FOIA . . . and defendant properly reviewed and

released responsive records under the FOIA").  In FOIA matters, agencies properly consider the

applicability of FOIA Exemptions 6 and 7(C) – both of which protect private information –

---

[6]Defendant is not arguing that Count I should be dismissed in its entirety.  OIP continues to search for and process documents responsive to paragraphs 5-10 of the request.  FBI has not made a final determination as to any portion of the request.

without reference to the Privacy Act, which does not prohibit the disclosure of any information that FOIA would require to be released.  *See, e.g., Elgabrowny v CIA*, No. 17-CV-00066 (TSC), 2019 WL 1440345, *11 (D.D.C. Mar. 31, 2019) (citing *Greentree*, 674 F.2d at 79).

With respect to the second element of a disclosure claim, a plaintiff must also show an intentional or willful violation in order to make a claim for damages.  5 U.S.C. § 552a(a)(4); *Maydak*, 630 F.3d at 179.  It is clear that "[t]he [Privacy] Act does not make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions."  *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984). "[A] violation of the statute must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.'"  *Maydak*, 630 F.3d at 179 (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007)).  "Intentional or willful" means: "somewhat greater than gross negligence, or, an act committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act."  *Waters v. Thornburgh*, 888 F.2d 870, 875 (D.C. Cir. 1989) (citations omitted), *abrogated on other grounds by Doe v. Chao*, 540 U.S. 614 (2004).  Monetary damages are available only where "the agency acted in a manner which was intentional or willful," 5 U.S.C. § 552a(g)(4) (providing remedy for suit under 552(g)(1)(C) or (D)).  Therefore, "proof of intent or willfulness is a *necessary* element of [the plaintiff's] claims . . . ."  *Sussman*, 494 F.3d at 1122 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)) (emphasis added).

### A.      Plaintiff Has Not Identified an Improper Disclosure Under the Privacy Act.

Plaintiff has not plausibly set forth facts from which one could conclude that there was a violation of the Privacy Act; *i.e*., he has not identified a disclosure concerning him, from a system of records, that was not consented and not authorized by an exception.

Count I claims that DOJ "disseminated information protected by the Privacy Act concerning Dr. Page to the New York Times and other media organizations in July 2018. The information included, but is not limited to, Dr. Page's unverified redacted FISA affidavits of October 2016, January 2017, April 2017, and June 2017." Compl. ¶ 26. In an earlier paragraph, he explains that this was a "primary example" of the supposed Privacy Act violations: "Defendant prematurely leaked the Plaintiff's illegitimate FISA affidavits to *the New York Times* on Saturday, July 21, 2018" and cites to a *New York Times* article. *Id.* ¶ 7.

This is the only disclosure identified in the Complaint as allegedly unauthorized. Even if we assume for the purposes of this motion that the disclosure of the FISA affidavits and orders was retrieved from a system of records and disclosed without consent, it was nonetheless authorized by an exception. Specifically, the FISA documents were not "leaked"; it is a matter of public record that DOJ disclosed small portions of the FISA applications and orders in response to FOIA requests. The article cited in the Complaint as a "leak" states that "an October 2016 application to the Foreign Intelligence Surveillance Court to wiretap Mr. Page, along with several renewal applications – were released to *The New York Times* and other news organizations that had filed Freedom of Information Act lawsuits to obtain them. Mr. Trump had declassified their existence earlier this year." *See New York Times*, *Carter Page FISA Documents Are Released by the Justice Department* (July 21, 2018), https://www.nytimes.com/2018/07/21/us/politics/carter-page-fisa.html (last visited Dec. 23, 2019). That assertion is borne out by the court opinions and dockets related to these FOIA requests. *See, e.g., Poulsen*, 373 F. Supp. 3d at 1257-58 (describing background); *see also NY Times v. DOJ*, 18 Civ. 2054 (S.D.N.Y.) (Dkt. No. 16) ("In exchange for *The Times*'s agreement

to dismiss this action, DOJ agrees to provide to *The Times* any documents responsive to *The Times*'s FOIA Request that are released in related actions.").

Disclosure via this FOIA release does not plead a violation of the Privacy Act. The Privacy Act does not prohibit disclosures that are required by FOIA. *See* 5 U.S.C. § 552a(b)(2); *Greentree*, 674 F.2d at 79 (stating subsection (b)(2) "represents a Congressional mandate that the Privacy Act not be used as a barrier to FOIA access"); *Plunkett*, 924 F. Supp. 2d at 306-07 ("[T]he Privacy Act does not bar disclosure of documents that are otherwise required to be disclosed under the FOIA . . . and defendant properly reviewed and released responsive records under the FOIA"); *see also McCready v. Nicholson*, 465 F.3d 1, 8 n.4 (D.C. Cir. 2006) (noting specifically that subsection (e)(6) – requiring that agencies ensure that records are accurate prior to dissemination – "does not apply to disseminations made pursuant to [FOIA]"). If information in an agency record is not protected by a FOIA exemption, it must be disclosed in response to a FOIA request. In processing the FISA applications under FOIA, DOJ determined, by definition, that the portions of the FISA applications that it released did not fall within any FOIA exemptions. DOJ was therefore required to release those portions under FOIA, making it a permissible disclosure under subsection (b)(2) of the Privacy Act. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 292, 294 (1979) ("FOIA is exclusively a disclosure statute" that prohibits only the improper "withholding [of] agency records" and does "not limit an agency's discretion to disclose information."). Plaintiff has certainly pled no facts that any of the released information was properly subject to an exemption. He alleges that "DOJ compiled information concerning Dr. Page's alleged collusion with sanctioned Russian officials," Compl. ¶ 29, but there's no allegation that that information was exempt from release under any particular FOIA exemption.

Finally, the Complaint claims that the alleged disclosure "is not limited to" the release of the FISA affidavits, Compl. ¶ 26, but the Complaint does not allege the existence of other disclosures, much less identify them sufficiently to plead a plausible violation of the Privacy Act.

### B.    Plaintiff Has Not Pled a Willful or Intentional Violation.

An agency acts in an intentional or willful manner only "by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." *Sussman*, 494 F.3d at 1122.  In distinguishing between an intentional violation and an inadvertent error, this Circuit has assembled a variety of tests—whether a "violation [is] so patently egregious and unlawful that anyone undertaking the conduct should have known it to be unlawful"; whether the violation was "commit[ed] without grounds for believing it lawful"; and whether the violator acted in "flagrant disregard[ of] other's rights under the act." *Id*. (citation omitted); *Waters v. Thornburgh*, 888 F.2d 870, 875 (D.C. Cir. 1989); *Maydak*, 630 F.3d at 182. Together, these tests provide a barrier to a claim that is "greater than gross negligence." *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) (quoting *Analysis of House and Senate Compromise Amendments to the Federal Privacy Act*, *reprinted in* 120 Cong. Rec. 40405-06 (1974)).  Additionally, courts have found affirmative evidence of a defendant's belief in the legality of a disclosure—and subsequently no willful or intentional violation—where the defendant does "due diligence before releasing the documents." *Reed v. Dep't of the Navy*, 910 F. Supp. 2d 32, 44 (D.D.C. 2012).

Plaintiff makes a conclusory, legal allegation that in disclosing inaccurate information described in Count III, DOJ acted "intentionally or willfully in violation of Dr. Page's privacy rights." Compl. ¶ 31.  Plaintiff does not plead any facts about how or if the FOIA processing willfully violated Page's privacy rights.  In fact, DOJ specifically redacted information about Page that had not been previously disclosed. *See* October 2018 Hardy Decl. ¶¶ 102-05.  Given

the Department's thoughtful treatment of its disclosure—and specifically with respect to any

potential Privacy Act implications—Plaintiff cannot prove willfulness or intent because no

reasonable finder of fact could conclude that the Department disclosed FISA applications and

orders without grounds for believing its actions were lawful, let alone that the Department

"flagrantly disregard[ed]" any rights guaranteed under the Privacy Act. *Sussman*, 494 F.3d at

1122. Accordingly, even if Plaintiff somehow adequately pleaded that the FOIA release

included more information that was required by FOIA, he did not plead that the resulting Privacy

Act violation was intentional.

## III.   NO INJUNCTIVE REMEDY IS AVAILABLE FOR THE IMPROPER DISCLOSURE CLAIMS.

Where a complaint is based on violations not described in § 552a(g)(1)(A)-(C) and

instead on the "catch-all," § 552a(g)(1)(D)—as Plaintiff's improper disclosure claims are—the

D.C. Circuit has held that only monetary damages, not declaratory or injunctive relief, are

available to plaintiffs, *Sussman*, 494 F.3d at 1122 (citing *Doe v. Stephens*, 851 F.2d 1457, 1463

(D.C. Cir. 1988); *Richardson v. Bd. of Governors of Fed. Reserve Sys*, 288 F. Supp. 3d 231, 238

(D.D.C. 2018) ("injunctive relief is available under the Act only for a limited category of suits:

suits to amend a record and suits for access to a record"), *aff'd*, No. 18-5063, 2018 WL 4103305

(D.C. Cir. Aug. 15, 2018). Accordingly, he is not entitled to "expungement" as a remedy. And

he certainly is not entitled to a referral for prosecution, as asked in the Complaint, a remedy he

has no standing to seek and the Court no power to order.

## IV.   PLAINTIFF FAILS TO ALLEGE A VIOLATION OF SECTION 552a(e)(6).

In addition to the reasons stated in Parts II and III, the Third Cause of Action should be

dismissed for failure to state a claim. Section 552a(e)(6) states that each agency maintaining a

system of records shall, "prior to disseminating any record about an individual to any person

other than an agency, ... make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes."  To show a violation of section 552a(e)(6), plaintiff must show that prior to disseminating any record, the agency failed to verify that it was accurate, complete, timely and relevant for its purposes.  5 U.S.C. § 552a(e)(6); *see Sellers v. Bureau of Prisons*, 959 F.2d 307, 312 (D.C. Cir. 1992); *Webb v. Magaw*, 880 F. Supp. 20, 23 (D.D.C. 1995).  Moreover, "the Privacy Act does not allow a court to alter records that accurately reflect an administrative decision, nor the opinions behind that administrative decision, no matter how contestable the conclusions may be." *Leighton v. CIA*, 412 F. Supp. 2d 30, 38 (D.D.C. 2006) (quoting *Reinbold v. Evers*, 187 F.3d 348, 360 (4th Cir. 1999)); *Kursar v. Transportation Sec. Admin.*, 751 F. Supp. 2d 154, 173 (D.D.C. 2010), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011).

Here, the Third Cause of Action fails to identify what information was inaccurate, to whom it was improperly disseminated, and for what purpose.  Without alleging what specific information was inaccurate, Plaintiff has not stated a claim.  The general statement that "DOJ compiled information concerning Dr. Page's alleged collusion with sanctioned Russian officials" is not sufficient to identify what information was inaccurate or to whom it was disseminated.

And to the extent he is attempting to make an amendment claim for injunctive relief rather than an improper disclosure claim for damages, he has not specified what exactly he is seeking to amend or to which component or components he made the request.  Nor does the Complaint plead sufficient information to show what system of records is at issue and whether or not the system of records at issue is exempt from the amendment portions of the Privacy Act. For each amendment request, he must exhaust administrative remedies.  *See, e.g., Hill v. U.S. Air*

*Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986); *McCoy v. Spencer*, 2019 WL 400615, *5-*6 (Jan.

31, 2019 D.D.C.).  As pleaded, this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Partial Motion to Dismiss

and For Summary Judgment and direct the parties to propose a schedule for filing a partial

Answer and completion of the processing of records subject to FOIA or the Privacy Act.[7]


Dated:  December 23, 2019                           Respectfully Submitted,


                                                    ETHAN P. DAVIS
                                                    Principal Deputy Assistant Attorney General

                                                    MARCIA BERMAN
                                                    Assistant Director, Federal Programs Branch

                                                    */s/Amy E. Powell*
                                                    AMY E. POWELL
                                                    Trial Attorney, Federal Programs Branch
                                                    Civil Division, Department of Justice
                                                    c/o U.S. Attorney's Office
                                                    150 Fayetteville St., Suite 2100
                                                    Raleigh, NC 27601
                                                    Phone: 919-856-4013
                                                    Email:  amy.powell@usdoj.gov

---

[7] The effect of a partial motion to dismiss is to suspend the need to answer until the Court rules on the motion.  *See Betz v. First Credit Servs., Inc*., 139 F. Supp. 3d 451, 456 (D.D.C. 2015) (noting the limited authority on this issue and adopting the "majority view" that filing a partial motion to dismiss "suspends the time by which it must respond to the entirety of the Complaint pursuant to Rule 12(a)").